UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

CASE NO. 21-20406-Cr.-Williams

vs.

NAMAN WAKIL,

    Defendant.

_____/

## MOTION TO MODIFY CONDITIONS OF RELEASE

    As early as the Spring of 2019, Mr. Wakil learned the United States was investigating his conduct. In July 2021, a federal grand jury indicted Mr. Wakil for foreign bribery and money laundering charges, and federal agents arrested him at his home in Miami, Florida.

    After his arrest, with the United States' agreement, the Court released Mr. Wakil on bond. Under the current conditions, Mr. Wakil may leave his home for attorney and doctor visits, and he wears an active GPS monitor. In addition, he receives monthly expenses from a single bank account. A former FBI agent controls and monitors the account so Mr. Wakil cannot access the funds.

    Since being released from his initial detention, Mr. Wakil has lived in his home with his wife and children. He has been out of the house for attorney visits,

probation visits, and church. He enjoys a strong relationship with his probation officer, and he has not violated any of his conditions of release.

Mr. Wakil requests that the Court modify his conditions of release so he may travel throughout Miami-Dade County from the hours of 9:00 am through 9:00 pm each day.

1. <u>Background</u>.

Since at least the spring of 2019, Mr. Wakil has known the U.S. Attorney's Office in Miami was investigating him for violations of the Foreign Corrupt Practices Act and related crimes. In May 2019, Mr. Wakil's counsel met with the prosecutor assigned to the case. Up until weeks before his arrest, the United States was openly requesting information about Mr. Wakil's bank accounts and properties, issued subpoenas to witnesses, and interviewed witnesses.

Mr. Wakil never fled. In fact, within days of obtaining an indictment, the United States arrested Mr. Wakil in his home in Miami.

On July 29, 2021, a federal grand jury sitting in the Southern District of Florida charged Mr. Wakil with Conspiracy to Violate the Foreign Corrupt Practices Act (Count I); Violating the Foreign Corrupt Practices Act (Count II); Conspiracy to Commit Money Laundering (Count III); International; Laundering of Monetary Instruments (Count IV); and Engaging in Transactions in Criminally Derived Property (Counts V-VII).

The indictment also includes a wide ranging forfeiture count which allowed the United States to file lis pendens against properties that Mr. Wakil and his companies' own and to freeze his personal and corporate bank accounts.

While he was aware of the investigation and shortly before the indictment, Mr. Wakil transferred the proceeds of a Swiss bank account (approximately $1million) to a bank account in Florida.  This transfer increased the amount of money the United States was able to seize, but it also demonstrates Mr. Wakil's strong ties and desire to remain in the United States.

Although the indictment did not reach two of Mr. Wakil's bank accounts (a Swiss bank account in his and his wife's name containing approximately $21mm, and another Swiss account in his wife's name containing approximately $5mm), Mr. Wakil arranged to have those funds transferred into U.S. bank accounts. Now, as part of the his conditions of pre-trial release, the proceeds of the larger account are in the Court's registry serving as the cash portion of Mr. Wakil's bond; the proceeds of the smaller account have been placed in an account controlled exclusively by former FBI agent and attorney, Ross Gaffney, to hold in escrow and disburse for ordinary family expenses only.  Mr. Wakil does not have signature authority over this account.

Mr. Wakil also has strong ties to the United States.  He is a permanent resident of the United States who has lived in Miami since 2009.  Other than a European

vacation and a vacation in the Caribbean islands, Mr. Wakil has not left the United States since 2012, and he surrendered his Venezuelan passport under the current bond conditions.

Mr. Wakil has lived in the same home for the last 9 years with his wife of 24 years and three college aged children (who are all United States citizens). He has lived in the home while under home detention.

Because Mr. Wakil's wife had a minority interest is a private plane that Mr. Wakil used to fly regularly, as part of the bond, Mr. Wakil agreed to direct the company that manages the plane to preclude Mr. Wakil from having access to the private jet.

Mr. Wakil has no ownership interest in the plane or the limited liability company that owns the plane (Citation X17 Ventures, LLC). Mr. Wakil is not the manager of Citation X17 Ventures, LLC. In addition, since Mr. Wakil placed his bond, the manager of Citation X17 Ventures, LLC has ordered the company which administers the plane and the pilots that Mr. Wakil may not be on or near the plane.

Mr. Wakil enjoys a strong relationship with his probation officer, and there have been no violations or incidents since his arrest. Mr. Wakil has left his home to attend church, to visit his lawyers, and to attend a discovery conference at the United States Attorney's Office.

2. <u>The Bail Reform Act</u>.

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, identifies the legal principles courts must follow to release or detain individuals before trial. Under the statute, courts must order pretrial release on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C, § 3142(b).

If it determines a higher level of supervision is necessary, the Court must consider and impose conditions that will ensure the defendant's appearance for trial. 18 U.S.C. § 3142(c). At the same time, the court must impose the "least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

When considering risk of flight in the detention context, Courts look to whether the defendant uses aliases, has unstable residential ties to a community, made efforts to avoid arrest, or hid assets. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). Courts also consider whether the defendant tried to flee or indicated an intent to flee in the face of pending investigations and indictments. *See United States v. Vortis*, 785 F. 2d 327 (D.C. Cir. 1986); *United States v. Koenig*, 912

F. 2d 1190, 1193 (19th Cir. 1990); *United States v. Cole*, 715 F. Supp. 677, 679 (E.D. Pa. 1988). On this issue, Magistrate Judge Torres has written:

> In economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains. Merely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant even in the face of a high monetary bond.

*United States v. Giordana*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005).

3. <u>Rather Than Home Detention, A Curfew Will Be More Than Sufficient To Ensure Mr. Wakil's Appearance At Trial</u>.

There is no dispute in this case that Mr. Wakil is appropriately released on bail, and that he poses no danger to the community.

In fact, the modification Mr. Wakil seeks is relatively minimal. Rather than being able to leave his home for certain activities and with prior permission from his probation officer, Mr. Wakil would be free to leave home at will, mostly during daylight hours, so long as he remained within Miami-Dade County, Florida.

Since mid-August (when he was released from his initial detention), Mr. Wakil has lived at home in full compliance with all conditions of his bond—including appearing on time to each of his court appearances (by Zoom). During this period, he has left his home to meet with counsel, go to church, and meet with his probation officer.

Critically, Mr. Wakil has not fled, and he has not shown any indications that he has any intent to flee. To be sure, Mr. Wakil's behavior demonstrates that he fully intends to remain in the United States.

Mr. Wakil remained in the United States for more than 2.5 years while he was aware that the United States was investigating his conduct. During this period, he made additional financial investments in the United States, and he sent money he was holding outside of the United States into the United States. Notably, Mr. Wakil imported approximately $1million into his United States bank account just months prior to his arrest. The United States froze these funds as part of the forfeiture charges.

Additionally, as part of the bond, Mr. Wakil arranged for his foreign bank accounts to be closed, and he returned approximately $26 million to the United States. He promptly placed with the Court a cash bond exceeding $21.2 million. The remaining funds sit in an escrow account under the supervision of a former FBI agent who releases funds only for ordinary family expenses.

In short, Mr. Wakil has voluntarily encumbered the assets he controls, and the United States encumbered his other assets. Mr. Wakil has exhibited no intent to deploy his assets to flee.

Moreover, other than the chance of conviction and jail, Mr. Wakil has no incentive to leave the United States. Mr. Wakil's wife of 24 years (a lawful

permanent resident) and three college aged children (all U.S. citizens) live in the United States. Mr. Wakil is a lawful permanent resident of the United States, and his business is in the United States. Although he was born in Syria, Mr. Wakil does not have a Syrian passport. Along these lines, although he is a Venezuelan citizen, he has not been to Venezuela since 2012 (to visit family), and he surrendered his passport to his probation officer.

4. Conclusion.

For all of these reasons, the Court should grant Mr. Wakil's motion to modify the conditions of his release.

## CERTIFCATION OF CONFERENCE

Undersigned counsel has discussed this motion with the Assistant United States Attorney assigned to this matter, and the United States opposes the relief requested.

Respectfully Submitted,

**THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.**
*Attorneys for Naman Wakil*
1221 Brickell Ave., Suite 2010
Miami, Florida  33131
Telephone: (305) 361-5500
Facsimile: (305) 428-9532

By:   /s/ Stephen James Binhak
Stephen James Binhak, Esq.
Florida Bar No. 736491
binhaks@binhaklaw.com


**BLACK SREBNICK, P.A.**
*Attorneys for Naman Wakil*
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

By:   /s/ Jackie Perceck
JACKIE PERCZEK, ESQ.
Florida Bar No. 042201
E-mail: JPerczek@RoyBlack.com

By:   /s/ Howard Srebnick
HOWARD SREBNICK, ESQ.
Florida Bar No. 919063
E-mail: HSrebnick@RoyBlack.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2021, I electronically filed the foregoing motion with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

   /s/ Stephen James Binhak
STEPHEN JAMES BINHAK