UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 21-20406-CR-WILLIAMS/McALILEY

UNITED STATES OF AMERICA,

v.

NAMAN WAKIL

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . /

### DEFENDANT'S MOTION TO DISMISS, SUPPRESS EVIDENCE, AND TO DISQUALIFY, AND REQUEST FOR A TAINT HEARING

Pursuant to the Fourth Amendment to the United States Constitution, Rule 12 of the Federal Rules of Criminal Procedure, *Wong Sun v. United States*, 371 U.S. 471 (1963), and the protections of *Simmons v United States,* 390 U.S. 377 (1968), defendant Naman Wakil moves to suppress all evidence derived directly and indirectly from the search of email accounts *wakilfrigi@gmail.com* and *natacha.wakilprop@gmail.com* pursuant to a search warrant issued on January 30, 2020, a copy of which is attached as **EXHIBIT 1**.

Additionally, because the prosecution team had access to attorney-client privileged communications between Wakil and the lawyers representing Wakil in the criminal investigation, including emails between Wakil and undersigned counsel Steve Binhak, this motion seeks to disqualify any member of the prosecution team who reviewed the privileged emails. If the taint from the government reviewing

privileged communications irreparably infected the grand jury or the prosecution team, Wakil seeks dismissal of the indictment.

Wakil respectfully requests a hearing on his motion to suppress, and a taint hearing on his motion to disqualify.

## **INTRODUCTION**

On July 29, 2021, Mr. Wakil was indicted and charged with FCPA and money laundering offenses. The government contends that Mr. Wakil conspired to bribe Venezuelan officials to obtain and retain contracts and other business advantages, including obtaining payment on contracts with entities and instrumentalities controlled by the Venezuelan government. Specifically, the government alleges a "corrupt food scheme" and a "corrupt oil scheme," claiming that Mr. Wakil bribed Venezuelan officials working at Venezuelan state-run entities Corporacion de Abastecimiento y Servicios Agricola Inc. ("CASA") and Petroleos de Venezuela, S.A. ("PDVSA").

On January 30, 2020, a year and a half before Mr. Wakil was indicted, the government obtained a search warrant for virtually every piece of information and for all emails from the beginning of time to the present in the Google Gmail account of Mr. Wakil, *wakilfrigi@gmail.com*, as well as the account of Wakil's personal assistant Natacha, *natacha.wakilprop@gmail.com*. The search warrant alleges that Wakil used Natacha's email account to conduct business.

In response to the warrant, Google produced to the government more than 100,000 emails: By our count, Google produced 29,832 emails from the *wakilfrigi* email account dating from 2008 to February 2020, and 82,299 emails from the *Natacha.wakilprop* email account dating from 2010 to February 2020.

No probable cause was established to authorize the wholesale seizure of more than 100,000 emails from these email accounts. On its face, the search warrant is fatally overbroad, as it fails the fundamental requirement that a search warrant particularly describe the items to be seized, and contains no temporal limitation as to the information to be produced by Google. Moreover, although the government was aware when it applied for the warrant that Mr. Wakil was then represented by undersigned counsel (Binhak) in the government's criminal investigation, this fact was not disclosed to the Magistrate Judge issuing the warrant, so the warrant does not establish any protocols to prohibit the seizure of attorney-client emails or to protect Mr. Wakil's attorney-client privilege. As a result of the government's failure, the prosecution team seized privileged emails between Wakil and his criminal defense counsel in this case (Binhak), emails between Wakil and other lawyers who were representing him in this matter, and emails that Wakil's counsel Binhak copied to Wakil's personal assistant Natacha, who was acting as a Spanish / English translator because Wakil speaks only minimal English.

Because the review of the emails produced by Google was not limited by any meaningful protocol and the government was able to seize the entirety of the email accounts without any limitations, the seizure and subsequent search of the emails constitutes the general search that the Fourth Amendment forbids. Accordingly, Mr. Wakil respectfully requests that the Court suppress all of the evidence obtained directly and indirectly from the Google warrant.

## The Affidavit and Google Warrant

On January 30, 2020, IRS Special Agent Patricia Gonzalez presented an Application and Affidavit for Search Warrant to obtain information and all emails associated with *wakilfrigi@gmail.com* and *natacha.wakilprop@gmail.com*. The affidavit and the search warrant are attached as **EXHIBIT 1.**

The affidavit sets forth the government's investigation relating to Mr. Wakil. Agent Gonzalez described information and documents the government received from cooperating witnesses or informants, as well as corporate records and financial information obtained from various banks. Then, in an effort to establish probable cause to seize all of the emails in the *wakilfrigi@gmail.com* account, Agent Gonzalez created a subheading titled "Probable Cause for *wakilfrigi@gmail.com*," containing only three allegations:

First, Agent Gonzalez asserted in conclusory fashion that according to a confidential source, Wakil uses that email "to conduct business activity related to the corrupt food schemes and the corrupt oil good scheme."

Second, that *wakilfrigi@gmail.com* was listed in some of Wakil's bank account opening documents.

And third, that a total of *one* email was sent to that account **in 2016**. These are the entirety of the allegations asserted regarding probable cause to search the *wakilfrigi@gmail.com* email account:

**Probable Cause for Wakilfrigi@gmail.com**

46.     According to CW5, Wakil uses wakilfrigi@gmail.com to conduct business activity related to the corrupt food scheme and the corrupt oil goods scheme.

47.     On or about March 6, 2015, wakilfrigi@gmail.com received an email from an employee of Conference including a copy of two invoices from Conference for PDVSA for 576 oil drums.

48.     Additionally, Wakil listed his email address as wakilfrigi@gmail.com on the account opening documents for accounts in his own name and in the names of Doux Frangosul and Michi Foods at CBH Bank in Switzerland.

Agent Gonzalez crated a similar subheading titled "Probable Cause for *natacha.wakilprop@gmail.com*," also containing only three allegations with respect to the Natacha email account: That according to the same source, Wakil used this

account "to conduct activities related to the corrupt food scheme and the corrupt oil goods scheme," and that a total of *two* emails were sent to that account **in 2013** asking Natacha to translate two documents for Wakil. These are the entirety of the allegations asserted regarding probable cause to search the *natacha.wakilprop@gmail.com* account:

**Probable Cause for Natacha.wakilprop@gmail.com**

36.     According to CW5, Wakil uses the account of his assistant Natacha—natacha.wakilprop@gmail.com—to conduct activities related to the corrupt food scheme and the corrupt oil goods scheme.

10

37.     On or about July 1, 2013, natacha.wakilprop@gmail.com received an email attaching a copy of an agreement between PDVSA and Conference and asking her assistance in translating the document.

38.     On or about October 1, 2013, natacha.wakilprop@gmail.com received an email with a proposed marketing pitch to PDVSA and a request for Natacha to translate the document and send to Wakil.

Based on these allegations that a total of three emails were sent to the *wakifrigi* and *natacha.wakilprop* email accounts (two emails in 2013 and one email in 2016), the government sought a warrant for *the entire* universe of *wakifrigi@gmail.com* and *natacha.wakilprop@gmail.com* emails, which the Magistrate Judge granted. Under the heading "Particular Things to be Seized," the search warrant commanded the seizure of "[t]he contents of **all emails** associated with the account," resulting in Google turning over to the government more than 100,000 emails:

---

**Attachment B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Google, Inc. (the "Provider")**

    To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account listed in Attachment A:

    1.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

---

The warrant, which tracks the language used in Agent Gonzalez's affidavit, is structured in the following manner:

**Attachment A** to the search warrant describes the thing or property to be searched, that is, the email account that Google owns, maintains, and operates, and **Attachment B** defines the particular things to be seized. Part One of Attachment B describes the information that the warrant requires Google to disclose to the government, including the following:

1. The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

2. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3. The types of service utilized;

4. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

5. All records pertaining to communications between the provider, and any person regarding the account, including contacts with support services and records of actions taken; and

6. For all information to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

In other words, the warrant commanded the seizure of the Gmail accounts in their entirety.

Part Two of Attachment B describes the information to be seized by the government, as follows:

> All information described above in Section 1 that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 371, 1956, and 1957 (conspiracy and money laundering; and 15 U.S.C. §§ 78dd-1. *et. seq.* (the Foreign Corrupt Practices Act ("FCPA"), those violations involving Naman Wakil and others occurring from January 2008 through the present, including, for those accounts listed in Attachment A, information pertaining to the following matters:

1. Communications with or about the following:

   a. Payments, offers of payments, or the promise of payments, or the giving or offering, or promising of anything of value, directly or indirectly, to any Venezuelan governmental entities (including state-owned enterprises) or individuals or businesses associated with any government agencies or any relatives, friends or personal assistants of such officials;

   b. Contracts, invoices, communications, or any other documents relating to Petroleos de Venezuela, S.A., or any of its subsidiaries, including but not limited to Petropiar S.A.;

   c. Contracts, invoices, communications, or any other document relating to Corporacion de Abastecimiento y Servicios Agricola Inc. or any of its subsidiaries or related entities;

   d. Contracts, invoices, communications, or any other documents relating to Wakil-related entities, including Atlas Systems International, Inc., Doux Frangosul Agro Avicola Industrial, S.A., J.A. Comericio de Generos Alimenticios e Servicios Ltd., Michi Foods, S.A., Obelisk Services, S.A. and Conference Inc., or any related or connected individuals or entities;

    e. Financial records and communications with bank officers, other financial officers, or accountants relating to Naman Wakil or any individual or entity related or connected to this individual or his companies;

    f. Real estate purchases by Naman Wakil or any individual or entity related or connected to this individual or his companies;

    g. Incorporation documents for any of Wakil's companies or any foreign entity connected, associated, or receiving money from any of Wakil's companies.

2. The identity and whereabouts of co-conspirators, accomplices, and aiders and abettors in the commission of the criminal activity under investigation; and,

3. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

4. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation; and

5. The identity of persons who created or used the user ID, including records that help reveal the whereabouts of such persons.

    As noted earlier, the warrant does not provide any protocol to protect against the seizure or review of attorney-client privileged emails, so numerous emails with Wakil's counsel were seized and made available to the prosecution team. On May 12, 2022, undersigned counsel informed the government that during the defense team's review of the discovery, the defense team discovered emails between Wakil and his attorney Steve Binhak as well as with other lawyers. The government advised

that it would restrict access to the Wakil emails by the government attorneys and the investigative team, and referred undersigned counsel to a DOJ filter attorney.

## ARGUMENT

### I.   THE SEARCH VIOLATED THE FOURTH AMENDMENT

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "[C]ourts must… conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The purpose of the Fourth Amendment Warrant Clause is to ensure that "those searches deemed necessary should be as limited as possible." *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971). Two related, but distinct, principles follow: (1) The breadth of the searches and seizures authorized by the warrant must be supported by probable cause and (2) the warrant must particularly state what is sought. *See United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1351 (N.D. Ga. 2009).

The particularity requirement is designed to prevent "general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 479 (1976) (quoting *Coolidge*, 403 U.S. at 467 (1971)); *see also United States v. Blake*,

868 F.3d 960, 973 (11th Cir. 2017). The Constitution limits the power of the government to search only "the specific areas and things for which there is probable cause to search," which requires that "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

### A.   <u>The Government Did Not Have Probable Cause to Search</u>

The Fourth Amendment requires that search warrants issue only when there is probable cause to believe that fruits, instrumentalities, or evidence of criminal acts exist at the place for which the warrant is requested. *Gates*, 462 U.S. at 238. Probable cause exists "if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed *and that evidence is at the place to be searched.*"  *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984), *cert. denied*, 469 U.S. 1021 (1985) (emphasis added;  citation omitted). An affidavit supporting a search warrant must set forth facts and circumstances establishing probable cause to believe that the evidence sought to be seized is located in the place to be searched. *See Gates*, 462 U.S. at 239. "The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things to be searched for and seized are

located [i]n the property to which entry is sought.'" *Zurcher v. Stanford Dailey*, 436 U.S. 547, 556 (1978). The affidavit must demonstrate why evidence of the alleged illegal activity will be found in the place to be searched. *See Gates*, 462 U.S. at 238; *Warden v. Hayden*, 387 U.S. 294, 307 (1967); *United States v. Griffin*, 555 F.2d 1323, 1325 (5th Cir. 1977). This showing cannot be based on conclusory statements in the affidavit that do not have sufficient factual support to sustain a probable cause finding. *See Gates*, 462 U.S. at 239.

Under these standards, the affidavit presented by Agent Gonzalez fails to establish probable cause to search the entire contents of the *wakilfrigi@gmail.com* and *natacha.wakilprop@gmail.com* email accounts for a time period of 12 years, from 2008 to 2020. The affidavit only proffers that **one email** was received in 2016 by the *wakifrigi* account and **two emails** were received in 2013 by the *natacha.wakilprop* account, so it is not possible that based on these allegations, probable cause would exist to search through 12 years of emails in these accounts:

> The Eleventh Circuit has recently noted that it is "troubling" when searches of email accounts "d[o] not limit the emails sought to emails sent or received within the time of [the suspect's] suspected participation in the conspiracy." *United States v. Blake*, 868 F.3d 960, 973 n.7 (11th Cir. 2017). Other courts have likewise emphasized the importance of the time period for which the Government seeks digital information. *E.g., United States v. Hanna*, 661 F.3d 271, 287 (6th Cir. 2011) (upholding search warrant that was limited to "the time period that the evidence suggested the activity occurred"); *In re Search of Google Email Accounts*, 92 F. Supp. 3d 944, 952 (D. Alaska 2015) (denying warrant application that "would authorize the government to seize and search the entirety of the six

Gmail accounts, even though the government has only established probable cause to look at a small number of emails within a narrow date range"); *United States v. Shah*, No. 5:13-CR-328-FL, 2015 WL 72118, at *14 (E.D.N.C. Jan. 6, 2015) (concluding search warrant was overbroad since it "offer[ed] nothing about the time frame of the offense" and instead sought all evidence "since account inception").

*See United States v. Matter of Search of Info. Associated With Fifteen Email Addresses*, 2017 WL 4322826 at *5 (M.D. Ala. Sept. 28, 2017).

The government obviously knew that the search and seizure of the entire email accounts would result in the seizure of data for which the government did not have probable cause, and no effort was made to provide the Magistrate Judge or Google key words or names of senders or recipients of emails, in an effort to limit the information that would be disclosed to the government. *See Blake*, 868 F.3d at 974 (discussed at length, *infra,* holding that warrant to Facebook for all of defendant's Facebook instant messages was overbroad where the warrant failed to "limit[] the request to messages sent to or from persons suspected at that time of being prostitutes or customers"). Additionally, with respect to emails post-2017, the government contends that the alleged conspiracies *ended* in 2017 (ECF#3), so there was zero basis to seize and search emails up to and including 2020.

Finally, Agent Gonzalez's statements that, according to a confidential source, the email accounts were used "to conduct activities related to the corrupt food scheme and the corrupt oil goods scheme," are not supported by any evidence, nor does the affidavit provide a basis upon which the Magistrate Judge could assess the

credibility or reliability of the confidential source. *See Gates*, 462 U.S. at 238 (the Magistrate must be able to objectively examine both the veracity and basis of knowledge of the person giving the information); *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (the information presented to the Magistrate "must be sufficient to allow the official to independently determine probable cause; 'his action cannot be a mere ratification of the bare conclusions of others'"), *quoting Gates*, 462 U.S. at 239. The affidavit describes the source of information as "an associate" of Mr. Wakil, but there are no further details on what "associate" means, for how long he or she was an associate, or how the source has knowledge of how Wakil or Natacha use the email accounts over the previous 12 years. And there is also no explanation as to how Mr. Wakil used the email account to "conduct" the alleged business activity, or in what years the email activity was conducted.

Agent Gonzalez's affidavit does not support the search and seizure of more than 100,000 emails that the search warrant purportedly authorized. Much more is required before the government is allowed an intrusion of this magnitude. Under the facts here, suppression is required because the Google warrant has permitted precisely the type of "general exploratory rummaging" that the Fourth Amendment forbids. *See Coolidge,* 403 U.S. at 467; *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); *Stone v. Powell*, 428 U.S. 465, 486 (1976); *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018).

### B. The Execution of the Search Was Unconstitutionally Overbroad

In *United States v. Blake*, the Eleventh Circuit cast doubt on the constitutionality of broad "two-step" warrants like the one at issue here. 868 F.3d 960, 973 (11th Cir. 2017); *see also United States v. Beck*, 2020 WL 7090697 at *3 (N.D. Ga. July 30, 2020), *report and recommendation adopted*, 2020 WL 6112187 (N.D. Ga. Oct. 16, 2020). The two-step procedure for seizing and searching electronically stored information is rooted in  Federal Rule of Criminal Procedure 41(e)(2)(B), which states:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.

While the two-step procedure is permissible, the warrant must still comply with the particularity requirements of the Fourth Amendment, and narrowly tailor the seizure to relevant evidence. *See United States v. Matter of Search of Info. Associated With Fifteen Email Addresses*, 2017 WL 4322826 (M.D. Ala. Sept. 28, 2017), *on reconsideration sub nom. United States v. Matter of Search of Info. Associated with Fifteen Email Addresses Stored at Premises Owned, Maintained, Controlled or Operated by 1&1 Media, Inc.*, 2017 WL 8751915 (M.D. Ala. Dec. 1, 2017).[1]

---

[1] Although courts have upheld the two-step procedure contemplated by Rule 41(e)(2)(A), Mr. Wakil asserts that the Rule and the two-step procedure is unconstitutional and contravenes the Fourth Amendment. By requiring the email hosts to disclose all email communications and documents in their entirety to the

*Blake* is the leading Eleventh Circuit case regarding particularity requirements of two-step search warrants for digital accounts. In *Blake*, the government served Microsoft with a warrant seeking certain categories of emails from both defendants' accounts related to sex trafficking charges, and served Facebook with two almost identical warrants for one of the defendant's entire Facebook account. 868 F.3d at 966. Defendant Moore argued that the warrants were overly broad and violated the Fourth Amendment's particularity requirement. *Id*.

The first warrant was directed at Microsoft, who owns Hotmail, and required Microsoft to turn over emails from two of the email accounts of Defendants Blake and Moore. *Id*. at 966. However, the Microsoft warrant *did not* seek all of the emails in the two email accounts; instead, the Microsoft warrant specifically limited the emails to be turned over to the government to certain categories of emails in the accounts that were linked to the sex trafficking charges against Blake and Moore. *Id*. For example, the warrant required Microsoft to turn over all "[e]mails, correspondence, and contact information for Backpage.com" and all "[e]mails and

---

government, the warrants are essentially allowing the government to seize the entire account, even though the government claims to only have probable cause to seize a smaller subset of responsive documents after searching through the entirety of the electronic evidence. And by receiving the entire email account even where it could only show probable cause for some emails, the government is allowed a "general exploratory rummaging" in the email account, which is prohibited by the Fourth Amendment. *Coolidge*, 304 U.S. at 467.

correspondence from online adult services websites" that were contained within the two email accounts. *Id.*

The government also obtained two almost identical search warrants for the contents of Moore's Facebook account. *Id.* The Facebook warrants explicitly utilized the same two-step process for the warrants used here, and required Facebook to disclose to the government virtually

> every type of data that could be located in a Facebook account, including every private instant message Moore had ever sent or received, every IP address she had ever logged in from, every photograph she had ever uploaded or been "tagged" in, every private or public group she had ever been a member of, every search on the website she had ever conducted, and every purchase she had ever made through "Facebook Marketplace," as well as her entire contact list.

*Id.* The information sought by the warrant was not limited to a period of time during which Moore was apparently engaged in criminal activity.[2] *Id.* Like the warrant directed at Google in this case, the government was permitted to search the entirety of the account, but was only authorized to seize what was relevant to the investigation. *Id.* at 967.

In determining whether the district court erred in denying Moore's pretrial motion to suppress, the Eleventh Circuit held that the "Microsoft warrant was okay" because it sufficiently complied with the particularity requirement. *Id.* at 973. The

---

[2] One warrant commanded the seizure of all data "from the period of the creation of the account," and the other did not specify a period of time. *Id.*

Microsoft warrant did not explicitly require the use of the two-step procedure and Microsoft did not provide the entirety of the email accounts. *Id.* Instead, the warrant "limited the emails to be turned over to the government, ensuring that only those that had the potential to contain incriminating evidence would be disclosed." *Id.* And while the court noted that it was "somewhat troubling" that the warrant was not temporally limited to the time period of the alleged conspiracy, the court found that it was nonetheless constitutional in its scope because "it sought only discrete categories of emails that were connected to the alleged crimes." *Id.* at 973 n.7. Indeed, Microsoft—not the government—separated responsive from non-responsive emails. According to the Eleventh Circuit, these limitations "prevented a general, exploratory rummaging through Moore's email correspondence." *Id.* (citing *Coolidge*, 403 U.S. at 467).

The two-step Facebook warrants, however, were not "okay" according to the Eleventh Circuit, as they "unnecessarily" required disclosure to the government of "virtually every kind of data that could be found in a social media account."[3] *Id.* at 974. Specifically, the court stated that the warrants "**should have** requested data only from the period of time during which Moore was suspected of taking part in the prostitution conspiracy," because such a limitation would have provided probable

---

[3] For example, the Court suggested that the warrants could have limited the seizure to messages to or from persons suspected of being prostitutes or customers. *Id.*

cause for a broader, although still targeted, search of the Facebook account and would have "undermined any claim that the Facebook warrants were the internet-era version of a 'general warrant.'" *Id*. (internal citations omitted).[4] The court stopped short of finding the Facebook warrants unconstitutionally broad, instead finding that even though the warrants "may have violated the particularity requirement," they fell in to the "good-faith exception" to the exclusionary rule established by *United States v. Leon,* 468 U.S. 897 (1984). *Id*. at 975.

Several district courts in the Eleventh Circuit have applied *Blake* to two-step search warrants of digital accounts and found that the warrants violated the

---

[4] The *Blake* Court rejected the government's argument that a social media account is akin to a computer hard drive. The Court reasoned:

> The means of hiding evidence on a hard drive—obscure folders, misnamed files, encrypted data—are not currently possible in the context of a Facebook account. Hard drive searches require time-consuming electronic forensic investigation with special equipment, and conducting that kind of search in the defendant's home would be impractical, if not impossible. By contrast, when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data. See generally Information for Law Enforcement Authorities, Facebook, http://bit.ly/QkrAHX (last visited July 27, 2017). That procedure does not appear to be impractical for Facebook or for the government. Facebook produced data in response to over 9500 search warrants in the six-month period between July and December 2015. United States Law Enforcement Requests for Data, Facebook, http://bit.ly/2aICDHg (last visited July 27, 2017).

*Id*. at 974 (citing *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012); *United States v. Stabile*, 633 F.3d 219, 234 (3d Cir. 2011)).

particularity requirement of the Fourth Amendment. For example, in *United States v. Mercery*, the Court suppressed the fruits of a search warrant issued to Instagram because the warrant was unnecessarily overbroad, and because the warrant was not tailored to the probable cause established in its supporting affidavit and instead required Instagram to disclose virtually every type of data to be found in a social media account. 2022 WL 585144, at *4 (M.D. Ga. Feb. 25, 2022). The Court declined to find that the good faith exception applied because "the Eleventh Circuit in *Blake* put law enforcement on notice that warrants authorizing the type of broad search of social media accounts like the one in this case are overbroad." *Id*.

Similarly, in *United States v. Matter of Search of Info. Associated With Fifteen Email Addresses,* the court found that warrants for 15 email accounts allegedly related to an investigation of tax fraud and identity theft were insufficiently particular under *Blake.* 2017 WL 4322826, at *6. First, the court rejected the government's proposed warrant applications because they lacked temporal limitations to the "time period that the evidence suggested the activity occurred," and placed stricter limitations on the time period of the warrant. Next, the court considered whether the government could search the entire email account: the court reasoned that email accounts "fall somewhere in the middle" of social media

accounts and computer hard drives[5], and therefore "one way to assure particularity...

would be by restricting how the government search the email data." *Id.* at 7. The

court concluded that "the Government's current request for *all* data related to *all* the

email accounts [was] too broad" because it did not describe with particularity what

will be searched—or, to the extent it did, it did not establish a sufficient nexus

between the place to be searched and the probable cause that would allow it." *Id.*

(emphasis in original); *see also United States v. Beck,* 2020 WL 7090697, at *3–4

(N.D. Ga. July 30, 2020), *report and recommendation adopted,* 2020 WL 6112187

(N.D. Ga. Oct. 16, 2020) ("The Court has doubts that the April 25 warrant itself

would pass muster under these standards. The warrant called for Google to produce

to the government all emails with essentially no other restriction, and then allowed

the government to review all of those emails and retain anything that might

constitute evidence of the crimes, with only non-inclusive examples of specific

categories of responsive documents as guidance. This language is far broader than

---

[5] Specifically, the Court stated: "Given the variety of services to enable users not only to store email but also to retain calendar information, address books, pictures, files, videos, and anything else one wants to store in the cloud, there are more ways to hide things in email accounts than on Facebook. Even so, sorting the main content—emails—by date or sender or recipient or even by keyword would be much easier than sorting data stored on a hard drive. As the DOJ's electronic search manual explains, investigators initially simply "serve the warrant on the provider as they would a subpoena, and the provider produces the material specified in the warrant." U.S. Dep't of Justice, Searching and Seizing Computers and Electronic Evidence in Criminal Investigations 134 (2009). This cannot be done in the more intricate, user-controlled computer context.

that in the Microsoft warrant that the Eleventh Circuit 'somewhat troubling' in *Blake*, and essentially the same as that in the Facebook warrant which the Eleventh Circuit heavily criticized, and all but stated was overbroad.")

In sum, courts in the Eleventh Circuit have rejected the all-encompassing two-step warrant that was used here, especially where the warrant has no date restriction in the information to be disclosed by the provider, as happened here, resulting in a massive seizure of 100,000+ emails over a span of 12 years. Such an overbroad warrant is essentially the "internet-era version of a general warrant" that *Blake* prohibits. *Blake*, 868 F.3d at 974 (citations omitted).[6] The warrant is anything but particular as it provides almost no limitations in either temporal scope or subject matter, contrary to *Blake*. Instead, the warrant purports to grant the government

---

[6] *See also In the Matter of the Search of Google Email Accts. Identified in Attach. A*, 92 F.Supp.3d 944, 946 (D. Alaska 2015) (denying two-step Google search warrant application as overbroad where although "the government promises to limit its search to the relevant date ranges, nothing in the proposed warrant precludes its agents from perusing other email content regardless how remote or how unrelated that content may be to the current investigation"); *In re [Redacted]@gmail.com*, *In re [Redacted]@gmail.com*, F. Supp. 3d 1100, 1104 (N.D. Cal. 2014) (denying two-step Google search warrant application and stating that "[t]he court is nevertheless unpersuaded that the particular seize first, search second [warrant] proposed here is reasonable in the Fourth Amendment sense of the word"); *Matter of Search of Info. Associated With Four Redacted Gmail Accounts*, 371 F. Supp. 3d 843, 845 (D. Or. 2018) (Court finds that search warrants which require Google to disclose to the government the "contents of all emails associated with the Email Account[s,]" are overbroad because it is unreasonable to compel a provider to disclose every email in its client's account when the provider is able to disclose only those emails the government has probable cause to search).

power to search the entirety of the email accounts to find documents the government believes contain responsive information, and allows the government unfettered access through more than a decade of Mr. Wakil's communications and documents attached to those communications.

Likewise, the warrant is overbroad in its description of the objects to be seized. *See United States v. Galpin,* 720 F.3d 436, 446 (2d Cir. 2013) (A warrant is overbroad if its description of the objects to be seized "is broader than can be justified by the probable cause upon which the warrant is based."); *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) (Warrants must "specify the items to be seized by their relation to designated crimes") (citing *United States v. Buck*, 813 F.2d 588, 590-92 (2d Cir. 1987) (warrant authorizing seizure of "any papers, things or property of any kind relating to [the] previously described crime" was overbroad). The warrant fails to limit the seizure in anyway, either by subject matter, keyword, activity, or otherwise. The warrant does not include any protocol for the ESI search, and instead states that the government will seize only what it considers "fruits, contraband, evidence and instrumentalities" of the crimes it is investigating for a *12-year* period of time. There could have been no doubt in the minds of the government agents that these email accounts, unrestricted by search terms or other limiters, would contain documents and information not authorized for review by the government.

## II.   THE WARRANT WAS UNREASONABLE IN ITS EXECUTION & RESULTED IN THE PROSECUTION TEAM SEIZING AND HAVING AVAILABLE FOR REVIEW MULTIPLE ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS

On April 26, 2019, undersigned counsel Binhak informed the prosecution team by email that Binhak was representing Wakil in the government's ongoing criminal investigation. But Agent Gonzalez did not provide this information in her January 2020 affidavit to the Magistrate Judge, which was particularly important because Agent Gonzalez sought seizure of emails through February 2020, giving the government access to almost a year of emails between Wakil and his criminal defense counsel in the very case the government was investigating.[7] After the warrant was executed and Google produced the emails, the government did not seal the emails nor did it notify Binhak or Wakil of the seizure to give them an opportunity to assert privilege. Instead, the government sought and obtained a sealed order directing Google not to disclose to Wakil the existence of the warrant, and then the government made all the seized emails (including those with counsel) available to the prosecution team for review.

In addition to being overbroad, the warrant was unreasonable in its execution for having no protocol by which to segregate and seal emails that are protected by the

---

[7] As described earlier, attorney Binhak was not only communicating directly with Wakil, but he was also communicating with Wakil's assistant Natacha, who was acting as a translator because Wakil speaks minimal English.

attorney-client privilege or the work-product doctrine. The government was aware, prior to the execution of the warrant, that Wakil was represented by counsel; at a minimum, the government should have instituted a filter protocol to ensure that the prosecution team would not have access to privileged documents and communications. *See generally In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235 (11th Cir. 2021).

Because the government failed to utilize a filter protocol, a taint hearing is necessary to determine whether any member of the prosecution team has reviewed privileged emails and should be disqualified. Federal courts have inherent authority to disqualify counsel, *see, e.g., Wheat v. United States*, 486 U.S. 153, 160 (1988) (disqualifying counsel of choice based on a potential conflict of interest), pursuant to "the generally accepted rule that the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) (upholding order disqualifying counsel). Prosecutorial invasion of attorney-client privilege or attorney work product warrants disqualification under this Court's supervisory authority. *See*, *e.g., United States v. Horn*, 811 F. Supp. 739 (D.N.H. 1992) (ordering disqualification of both the prosecutor and agent who obtained possession of defense work).

To the extent that the taint from the government reviewing privileged communications irreparably infected the grand jury or the prosecution team, Wakil seeks dismissal of the indictment. *See United States v. Ofshe,* 817 F.2d 1508, 1516 (11th Cir. 1987); *United States v. Levy, 577 F.2d 200, 208 (3rd Cir. 1978)* (dismissing indictment where government invaded the defense camp and learned defense strategies: "[T]he government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself . . . The government's knowledge of this planned strategy would permit it not only to anticipate and counter such an attack on its witnesses' credibility, but also to select jurors who would be more receptive ….").

## III.   THE COURT SHOULD REQUIRE RETURN OF THE EMAILS

The government's continued ability to search through the significant number of irrelevant emails is a continued violation of Mr. Wakil's privacy for which no reasonable justification can be found in the warrant's application. This is especially harmful because the government obtained from Google every bit of data pertaining to Mr. Wakil's email accounts, without any limitation as to time or pertinence to its investigation. Mr. Wakil is entitled to the return of all of the privileged documents and non-responsive data.

## CONCLUSION

For the foregoing reasons, Mr. Wakil moves to suppress all evidence derived directly and indirectly from the warrant to Google pertaining to the *wakilfrigi@gmail.com* and *natacha.wakilprop@gmail.com* email accounts, and to disqualify any member of the prosecution team who has reviewed the privileged emails with Wakil's counsel. Wakil requests a hearing on this Motion.

Respectfully submitted,

**THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.**
1221 Brickell Ave., Suite 2010
Miami, Florida 33131
(305) 361-5500

*/s/ Stephen James Binhak*
**STEPHEN JAMES BINHAK, ESQ.**
Florida Bar No. 736491
binhaks@binhaklaw.com

**BLACK SREBNICK**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

*/s/ Howard Srebnick*
**HOWARD SREBNICK, ESQ.**
Florida Bar No. 919063
HSrebnick@RoyBlack.com

*/s/ Jackie Perczek*
**JACKIE PERCZEK, ESQ.**
Florida Bar No. 04220
JPerczek@RoyBlack.com