UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 21-20406-CR-WILLIAMS/McALILEY

UNITED STATES OF AMERICA,

v.

NAMAN WAKIL

. . . . . . . . . . . . . . . . . . . . . . . . . . . . /

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE

### 1. Count 2 must be dismissed because it fails to allege an FCPA offense

The FCPA does not reach every payment made to a foreign official. Instead, the FCPA criminalizes only those payments (or promises to make payments) that are made "for purposes of" (1) influencing a foreign official to act or make a decision in his official capacity, or (2) inducing such an official to perform or refrain from performing an act in violation of his duty, or (3) securing some improper advantage to the payor. Even then, the FCPA criminalizes these payments *only if* the payor makes the payment "in order to assist" the payor in obtaining or retaining business with any person.[1]

---

[1] To avoid multiple citations to the statute throughout this reply, the statute is reproduced as **Exhibit 1** with the words that are relevant to this part of the argument highlighted in red.

Count 2 purports to charge a substantive FCPA offense. The relevant factual allegations are contained in four short paragraphs, which allege that in 2015, Wakil "caused" Venezuelan Official 4 to approve a contract, ECF#3:10¶19, Wakil "caused" payments to be made under that contract, ECF#3:10¶20, two years *later*, in 2017, Wakil met Venezuelan Official 4 in Miami "to discuss the bribe for Venezuelan Official 4 relating to the … contract," ECF#3:10¶21, and also in 2017, Wakil caused the transfer of a condominium to a close relative of Venezuela Official 4 for the official's benefit. ECF#3:10¶22. Count 2 alleges that the FCPA offense occurred "on or about September 1, 2017," when Wakil "caused an email to be sent in connection with the transfer of [the] condominium . . . for the benefit of Venezuelan Official 4 . . " ECF#3:13-14¶2.

An act done in 2017 cannot logically be "for the purpose of" "influencing" or "inducing" something that happened two years earlier, in 2015. Thus, Count 2 does not allege that the 2017 condominium transfer was "for the purpose of" "influencing" or "inducing" Venezuelan Official 4 to grant the contract that was already awarded in 2015. Because the FCPA does not reach this alleged condominium transfer, Wakil moved to dismiss Count 2 on the ground that it fails to allege a cognizable FCPA offense.

The government first responds that "the FCPA statute contains no provision that the actual payment of a bribe must occur prior to business being awarded," ECF#76:8, but this overlooks the statutory requirement that the payment be "for the

purpose of" "influencing" or "inducing" the public official, "in order to assist" the payor "in obtaining or retaining business." The statute does not indicate exactly on what date the payment must be made, but the statute does require that the payment be made *for the purpose of* securing the business. In Wakil's case, Count 2 fails to satisfy this requirement because it describes a financial transaction in 2017 that could not have been made *for the purposes of* influencing Venezuelan Official 4 to award a contract that had already been awarded two years before.

The government also argues that the FCPA "criminalizes an offer or promise to pay a bribe in advance of the award of business," ECF#76:8, and that it can be "inferred" from the allegations in the indictment that the 2015 contract was obtained through a promise to pay. ECF#76:9-10. The government is correct that the FCPA criminalizes a "promise to pay" as long as all the other conditions are met. But the Indictment contains *no* allegations that Wakil made any promise to Venezuelan Official 4 in 2015. In fact, there are no allegations that Wakil even met Venezuelan Official 4 in 2015. All the allegations about Venezuelan Official 4 relate to 2017 (ECF#3 page 10, ¶21; page 12, ¶10; page 13, ¶13). And the only allegation about Wakil discussing any payment with Venezuelan Official 4 states that *in 2017*, Wakil met Venezuelan Official 4 in Miami "to discuss the bribe for Venezuelan Official 4 relating to the … contract." ECF#3:10¶21.

Not only is the proposed "inference" not supported by the allegations in the Indictment, but such an inference is not authorized by the Fifth Amendment. The

Grand Jury Clause of the Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Grand Jury Clause requires that every element of a crime must be charged in the indictment. *Hamling v. United States*, 418 U.S. 87, 117 (1974). This requirement ensures that the grand jury has considered all of the elements of the offense in deciding whether to indict, and protects against unfounded prosecutions. *See United States v. Calandra*, 414 U.S. 338, 343 (1974) (the grand jury's responsibilities include "the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions"); *Stirone v. United States*, 361 U.S. 212, 218 (1960) (asserting that "the very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge").

Additionally, the requirement that an indictment must allege all the elements of the offense ensures that defendants are apprised of the offense with which they are charged and ensures that defendants are tried only on the charges returned by the grand jury in the indictment. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United States v. Miller*, 471 U.S. 130, 140 (1985); *Stirone*, 361 U.S. at 216-17; *Costello v. United States*, 350 U.S. 359, 363 (1956) ("an indictment returned by a legally constituted and unbiased grand jury … if valid on its face, is enough to call for trial of the charge on the merits").

Thus, an indictment must do more than parrot statutory language, and must identify the manner and means in which the defendant allegedly violated the statute. Particularly in cases "[w]here guilt depends so crucially upon . . . a specific identification of [a] fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764.

Count 2 fails these constitutional requirements. If the government's theory is that a promise to pay was made in 2015, this is an element of the offense that had to be factually alleged in the Indictment. Without this allegation, the 2017 condominium transfer is not an FCPA offense.

"Inferences" about what the grand jury may have found cannot save Count 2. The Court cannot guess what was in the minds of the grand jury when it returned Wakil's Indictment, nor is such guessing authorized by the Constitution. Otherwise, Wakil would be denied the protections the grand jury was designed to secure by allowing a conviction on the basis of facts not found by the grand jury. "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.

Finally, the government suggests generally that Wakil could request a bill of particulars, ECF#76:5 n.2. To the extent this is directed to Wakil's arguments as to Count 2,the Supreme Court has held: "It is argued that any deficiency in the indictments in these cases could have been cured by bills of particulars. But it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 769–70.

## 2. Count 1 fails to allege a conspiracy to violate the FCPA

Count 1 alleges a conspiracy to violate the FCPA. The Indictment alleges that Wakil "agreed to make" "corrupt payments to … Venezuelan Official[s] … in order to obtain and retain contracts *and business advantages, including disbursement of contractual payments*." (i.e., pg. 7 ¶4; pg.8 ¶7; pg. 9 ¶12; pg. 11 ¶5; pg. 15;) (emphasis added).

The FCPA does not independently criminalize payments made "in order to obtain or retain … business advantages." Instead, as it relates to "advantages," the statute prohibits making payments to a foreign official "for the purposes of . . . securing any *improper* advantage" but only if it is done "*in order to* assist [the payor] *in obtaining business* for or with any person." [2]

---

[2] As with Exhibit 1, in order to avoid multiple citations to the statute, the statute is reproduced as **Exhibit 2** with the words that are relevant to this part of the argument highlighted in red.

The government argues that the FCPA is read broadly and that "here, the business advantages the defendant obtained included payments on contracts that were illegally obtained and highly inflated. These contracts were procured . . . through bribe payments [so they] were not payments the defendant was legally entitled to." ECF#76:11. However, in the context of the Indictment charging FCPA violations, the words "illegal," "bribe," and "not legally entitled to" must refer to contracts obtained or retained in violation of the FCPA, meaning that all the other elements of the FCPA's provisions must have been pled. *See United States v. Kay*, 359 F.3d 738, 761 (5th Cir. 2004) ("The business nexus element serves to delimit the scope of the FCPA by eschewing applicability of the FCPA to payments to foreign officials that are not intended to assist in getting or keeping business"). Thus, for contracts already obtained, an allegation that Wakil paid a government official in order to get paid on those contracts is not an FCPA violation. Indeed, in *Kay* (relied upon by the government) the court held that Congress did not intend the reading of the FCPA that the government proposes here:

> When Congress amended the language of the FCPA, however, rather than inserting "any improper advantage" immediately following "obtaining or retaining business" within the business nexus requirement (as does the Convention), it chose to add the "improper advantage" provision to the original list of abuses of discretion in consideration for bribes that the statute proscribes. Thus, as amended, the statute now prohibits … making of a payment to such a foreign official to secure an "improper advantage" *that will assist in obtaining or retaining business.*

*Kay*, 359 F.3d at 754 (emphasis added).

Finally, the government also argues that if Wakil was paying a government official to get "payment priority" (*i.e.,* to get paid ahead of others), this "also would demonstrate a business advantage *and would violate the FCPA*." This is wrong for the same reasons already stated: receiving payment priority for an already-obtained contract does not "assist [the payor] *in obtaining* business."

### 3. The Indictment must plead the inapplicability of the "facilitation" payments exception in order to satisfy the intent element of an FCPA offense

Wakil acknowledges the general rule that a "pleading founded on a general provision defining the elements of an offense ... need not negative the matter of an exception made by a proviso or other distinct clause ... and that it is incumbent on one who relies on such an exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922). However, "[i]n rare instances, an exception can be so necessary to a true definition of the offense that the elements of the crime are not fully stated without the exception." *S.E.C. v. Jackson,* 908 F. Supp. 2d 834, 856 (S.D. Tx. 2012) (quoting *United States v. Outler*, 659 F.2d 1306, 1310 (5th Cir.1981)).

The district court in *Jackson* examined the legislative history, including the history that "led up to the addition of the 'facilitating' payments exception," and concluded "that the evolution of the statute in this case strongly supports the conclusion that the SEC must bear the burden of negating the "facilitating" payments

exception. The facilitating payments exception is best understood as a threshold requirement to pleading that a defendant acted 'corruptly.'" *Id.* at 857-58.

This Court should follow *Jackson* and hold that the facilitating payments exception is a threshold requirement to pleading that a defendant acted corruptly. *Jackson*, 908 F. Supp. 2d at 857-58. Negating the exception is necessary to separate wrongful from innocent conduct, especially in this case where the government is alleging that part of Wakil's crime included receiving payments on contracts, thereby implicating the exception. Additionally, negating the facilitation-payments exception ensures that the grand jury has not indicted on conduct that is excepted from the FCPA's prohibitions.

Analogous precedent, although in other areas of the law, tends to support a requirement that the government negate the exception. *See Ruan v. United States*, 142 S. Ct. 2370 (2022) (in a case where a doctor is charged with drug trafficking under 21 USC § 841 in relation to a prescription for controlled substances, where the statute provides that "[e]xcept as authorized" it shall be unlawful "for any person knowingly or intentionally ... to manufacture, distribute, or dispense ... a controlled substance," the government bears the evidentiary burden to prove beyond a reasonable doubt that the defendant was unauthorized); *Liparota v. United States*, 471 U.S. 419, 433 (1985) ("in a prosecution for violation of § 2024(b)(1), the Government must prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations").

**4. The money laundering counts**

Counts 3 through 7 allege money laundering conspiracy, international laundering of monetary instruments, and engaging in transactions in criminally derived property. Each count alleges that the specified unlawful activity is "a felony violation of the FCPA" <u>and</u> "an offense against a foreign nation, specifically Venezuela, involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official."

To the extent the Court determines that the FCPA allegations in the Indictment are insufficient, the designation of the FCPA violation as proceeds would be insufficient as well.

Respectfully submitted,

**THE LAW OFFICE OF STEPHEN JAMES BINHAK, P.L.L.C.**
1221 Brickell Ave., Suite 2010
Miami, Florida 33131
(305) 361-5500

*/s/ Stephen James Binhak*
**STEPHEN JAMES BINHAK, ESQ.**
Florida Bar No. 736491
binhaks@binhaklaw.com

**BLACK SREBNICK**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

*/s/ Howard Srebnick*
**HOWARD SREBNICK, ESQ.**
Florida Bar No. 919063
HSrebnick@RoyBlack.com

*/s/ Jackie Perczek*
**JACKIE PERCZEK, ESQ.**
Florida Bar No. 04220
JPerczek@RoyBlack.com